S10Q1564. U.S. BANK NATIONAL ASSOCIATION v. GORDON.
(709 SE2d 258)

NAHMIAS, Justice.

The United States District Court for the Northern District of Georgia has certified a question to this Court regarding the 1995 Amendment to OCGA § 44-14-33. See Ga. L. 1995, p. 1076, § 1. The question is whether the 1995 Amendment

means that, in the absence of fraud, a security deed that is actually filed and recorded, and accurately indexed, on the appropriate county land records provides constructive notice to subsequent bona fide purchasers, where the security deed contains the grantor's signature but lacks both an official and unofficial attestation (i.e., lacks attestation by a notary public and also an unofficial witness).

For the reasons that follow, we answer the certified question in the negative.

1. In October 2005, Bertha Hagler refinanced her residence through the predecessor-in-interest to U.S. Bank National Association (U.S. Bank) and granted the predecessor a first and a second security deed to her residence. The security deeds were recorded with the Clerk of the Fulton County Superior Court in November 2005, but the first security deed was not attested or acknowledged by an official or unofficial witness. According to the district court's certification order:

> Gordon, the Chapter 7 Trustee in Hagler's bankruptcy case, sought to avoid or set aside the valid, but unattested, first security deed to the residence through the "strong-arm" power of Section 544 (a) (3) of the Bankruptcy Code. See 11 U.S.C. § 544 (a) (3). Gordon argued that under the proper interpretation of § 44-14-33 of the Georgia Code, a security deed that is not attested by an official and unofficial witness cannot provide constructive notice to a subsequent purchaser even if it is recorded. U.S. Bank argued, in opposition, that a 1995 amendment to § 44-14-33 changed the law to enable an unattested security deed to provide constructive notice. Gordon argued in response that the 1995 amendment served only to recognize constructive notice from a security deed with a "latently" defective attestation, meaning an irregular attestation that appears regular on its face; a deed with a "patently" defective attestation, meaning an attestation that is obviously defective on its face, would not provide constructive notice.

The bankruptcy court ruled in Gordon's favor, concluding that, under the 1995 Amendment, a security deed with a facially defective attestation would not provide constructive notice, while a security deed with a facially proper but latently defective attestation would provide constructive notice. See *Gordon v. U.S. Bank, Nat. Assn. (In re Hagler)*, 429 BR 42, 47-53 (Bankr. N.D. Ga. 2009). Concluding that the issue involved an unclear question of Georgia law and that no Georgia court had addressed the issue after the 1995 Amendment, the district court certified the question to this Court. We conclude that the bankruptcy court properly resolved the issue.

2. OCGA § 44-14-61 provides that "[i]n order to admit deeds to secure debt . . . to record, they shall be attested or proved in the manner prescribed by law for mortgages." OCGA § 44-14-33 provides the law for attesting mortgages:

> In order to admit a mortgage to record, it must be attested by or acknowledged before an officer as prescribed for the

attestation or acknowledgment of deeds of bargain and sale; and, in the case of real property, a mortgage must also be attested or acknowledged by one additional witness. In the absence of fraud, if a mortgage is duly filed, recorded, and indexed on the appropriate county land records, such recordation shall be deemed constructive notice to subsequent bona fide purchasers.

The second sentence of this Code section was added by the 1995 Amendment.

3. We first address Gordon's contention that the 1995 Amendment does not apply at all to security deeds. He contends that only the first sentence of OCGA § 44-14-33, which expressly deals with attestation, is applicable to security deeds through OCGA § 44-14-61 and that, because the 1995 Amendment addresses constructive notice, it does not apply to security deeds. We disagree. The General Assembly chose to enact the 1995 Amendment not as a freestanding Code provision but as an addition to a Code provision clearly referenced by OCGA § 44-14-61. Moreover,

[t]he objects of a mortgage and security deed . . . under the provisions of the Code are identical — security for a debt. While recognizing the technical difference between a mortgage and security deed hereinbefore pointed out, this court has treated deeds to secure debts . . . as equitable mortgages.

*Merchants & Mechanics' Bank v. Beard*, 162 Ga. 446, 449 (134 SE 107) (1926). The General Assembly is presumed to have been aware of the existing state of the law when it enacted the 1995 Amendment, see *Fair v. State*, 288 Ga. 244, 252 (702 SE2d 420) (2010), so the placement of the amendment makes complete sense. Indeed, no reason has been suggested why the General Assembly would want the same type of recording to provide constructive notice for mortgages but not for security deeds. Accordingly, we conclude that the 1995 Amendment is applicable to security deeds.

4. Turning back to the certified question, we note that the "recordation" that is deemed to provide constructive notice to subsequent purchasers clearly refers back to "duly filed, recorded, and indexed" deeds. U.S. Bank argues that a *"duly* filed, recorded, and indexed" deed is simply one that is *in fact* filed, recorded, and indexed, even if unattested by an officer or a witness. We disagree.

Particular words of statutes are not interpreted in isolation; instead, courts must construe a statute to give " " "sensible and intelligent effect" to all of its provisions,' " *Footstar, Inc. v. Liberty*

*Mut. Ins. Co.*, 281 Ga. 448, 450 (637 SE2d 692) (2006) (citation omitted), and "must consider the statute in relation to other statutes of which it is part." *State v. Bowen*, 274 Ga. 1, 3 (547 SE2d 286) (2001). In particular, "statutes 'in pari materia,' i.e., statutes relating to the same subject matter, must be construed together." *Willis v. City of Atlanta*, 285 Ga. 775, 776 (684 SE2d 271) (2009).

Construing the 1995 Amendment in harmony with other recording statutes and longstanding case law, we must reject U.S. Bank's definition of "duly filed, recorded, and indexed." Its definition ignores the first sentence of OCGA § 44-14-33, which provides that to admit a security deed to record, the deed must be attested by or acknowledged before an officer, such as a notary public, and, in the case of real property, by a second witness. See OCGA § 44-2-15 (listing the "officers" who are authorized to attest a mortgage or deed). Other statutes governing deeds and mortgages similarly preclude recording and constructive notice if certain requirements are not satisfied. See OCGA § 44-2-14 (a) ("Before any deed to realty or personalty or any mortgage, bond for title, or other recordable instrument executed in this state may be recorded, it must be attested or acknowledged as provided by law."); OCGA § 44-14-61 ("In order to admit deeds to secure debt or bills of sale to record, they shall be attested or proved in the manner prescribed by law for mortgages"). Indeed, U.S. Banks' construction of the 1995 Amendment contradicts OCGA § 44-14-39, which provides that "[a] mortgage which is recorded . . . without due attestation . . . shall not be held to be notice to subsequent bona fide purchasers."

Thus, the first sentence of OCGA § 44-14-33 and the statutory recording scheme indicate that the word "duly" in the second sentence of OCGA § 44-14-33 should be understood to mean that a security deed is "duly filed, recorded, and indexed" only if the clerk responsible for recording determines, from the face of the document, that it is in the proper form for recording, meaning that it is attested or acknowledged by a proper officer and (in the case of real property) an additional witness. This construction of the 1995 Amendment is also consistent with this Court's longstanding case law, which holds that a security deed which appears on its face to be properly attested should be admitted to record, see *Thomas v. Hudson*, 190 Ga. 622, 626 (10 SE2d 396) (1940); *Glover v. Cox*, 137 Ga. 684, 691-694 (73 SE 1068) (1912), but that a deed that shows on its face that it was "not properly attested or acknowledged, as required by statute, is ineligible for recording." *Higdon v. Gates*, 238 Ga. 105, 107 (231 SE2d 345) (1976).

We note that at the time the 1995 Amendment was considered and enacted, the appellate courts of this State had "never squarely considered" whether a security deed with a facially valid attestation

could provide constructive notice where the attestation contained a latent defect, like the officer or witness not observing the grantor signing the deed. *Leeds Bldg. Prod. v. Sears Mtg. Corp.*, 267 Ga. 300, 301 (477 SE2d 565) (1996). The timing of the amendment suggests that the General Assembly was attempting to fill this gap in our law as the *Leeds* litigation worked its way through the trial court and the Court of Appeals before our decision in 1996. See *Gordon*, 429 BR at 50. We ultimately decided in *Leeds* that, "in the absence of fraud, a deed which, on its face, complies with all statutory requirements is entitled to be recorded, and once accepted and filed with the clerk of court for record, provides constructive notice to the world of its existence." 267 Ga. at 302. We noted that *Higdon* remained good law, because in that case the deed was facially invalid, did "not . . . entitle [the deed] to record," and "did not constitute constructive notice to subsequent purchasers." *Leeds*, 267 Ga. at 302. Because we reached the same result as under the 1995 Amendment, we did not have to consider whether the amendment should be applied retroactively to that case. See id. at 300, n. 1.

Our interpretation of the 1995 Amendment also is supported by commentators that have considered the issue. See Frank S. Alexander, Georgia Real Estate Finance and Foreclosure Law, § 8-10, p. 138 (4th ed. 2004) (stating that "[a] security deed that is defective as to attestation, but without facial defects, provides constructive notice to subsequent bona fide purchasers"); Daniel F. Hinkel, 2 Pindar's Georgia Real Estate Law and Procedure, § 20-18 (6th ed. 2011) (without mentioning deeds with facial defects, explaining that the 1995 Amendment to OCGA § 44-14-33 and *Leeds* "provide that in the absence of fraud a deed or mortgage, which on its face does not reveal any defect in the acknowledgment of the instrument and complies with all statutory requirements, is entitled to be recorded, and once accepted and filed with the clerk of the superior court for record, provides constructive notice to subsequent bona fide purchasers"); T. Daniel Brannan & William J. Sheppard, *Real Property*, 49 Mercer L. Rev. 257, 263 (Fall 1997) (without mentioning deeds with facial defects, stating that the 1995 Amendment to OCGA § 44-14-33 resolves "the issue that was before the court in [*Leeds*]"). As noted by the bankruptcy court, if Hinkel and the law review authors thought that the 1995 Amendment altered longstanding law with regard to deeds containing facial defects as to attestation, they surely would have said so. See *Gordon*, 429 BR at 52-53.

Finally, it should be recognized that U.S. Bank's interpretation of the 1995 Amendment to OCGA § 44-14-33 "would relieve lenders of any obligation to present properly attested security deeds" and "would tell clerks that the directive to admit only attested deeds is merely a suggestion, not a duty," and this would risk an increase in

fraud because deeds no longer would require an attestation by a public officer who is sworn to verify certain information on the deeds before they are recorded and deemed to put all subsequent purchasers on notice. *Gordon*, 429 BR at 51-52. Moreover, while "it costs nothing and requires no special expertise or effort for a closing attorney, or a lender, or a title insurance company to examine the signature page of a deed for missing signatures before it is filed," U.S. Bank's construction would

> shift to the subsequent bona fide purchaser and everyone else the burden of determining [possibly decades after the fact] the genuineness of the grantor's signature and therefore the cost of investigating and perhaps litigating whether or not an unattested deed was in fact signed by the grantor.

Id. at 52.

For these reasons, we answer the certified question in the negative.

*Certified question answered. All the Justices concur.*

DECIDED MARCH 25, 2011.

*Morris, Manning & Martin, John B. Vitale, Lewis E. Hassett*, for appellant.

*Arnall, Golden & Gregory, Neil C. Gordon, Michael F. Holbein*, for appellee.

*Smith, Gambrell & Russell, Edward D. Burch, Jr., Dodson, Feldman & Dorough, William H. Dodson II, Taylor, English & Duma, Craig K. Pendergast*, amici curiae.

